USDC- BALTIMORE
'22 AUG 15 PM2:24

MJC/HMG2022R00324

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 22 cr 287 - LKG |
| | : | |
| ROBERT ADRIAN DINOTO, | : | (Conspiracy to Commit Wire Fraud, |
| | : | 18 U.S.C. § 1349; Forfeiture, 18 U.S.C. |
| | : | § 981(a)(1)(C), 21 U.S.C. § 853(p), |
| Defendant. | : | and 28 U.S.C. § 2461(c)) |
| | : | |

...oOo...

## INFORMATION

### COUNT ONE

**(Conspiracy to Commit Wire Fraud)**

The United States Attorney for the District of Maryland charges that:

**Introduction**

At times relevant to this Information:

1. The defendant, **ROBERT ADRIAN DINOTO**, was a resident of New York.

2. **ROBERT ADRIAN DINOTO** was the owner and President of Sandpiper Properties, Inc., trading as American Pride Distributors (hereinafter "American Pride"), located at 7600 Jericho Turnpike, Suite 110, Woodbury, New York. American Pride was in the business of selling commercial drum containers, including new steel and fiber drums of varying sizes. Manufacturers used the drums to store and transport products.

3. Company A was a global business headquartered in New York that formulated and produced oils and extracts used in the food industry. Company B was affiliated with Company A and produced flavoring ingredients and seasonings for the food industry (hereinafter, Company A

and Company B are collectively referred to as the "Companies"). The Companies had manufacturing facilities in Belcamp, Maryland, and Abingdon, Maryland. To ship their products, the Companies used large plastic, metal, or fiber drums as containers, which they purchased from drum vendors located in various states.

4. EUGENE DINOTO was a resident of Maryland who was employed as the facility manager for the Companies until approximately January 2020. EUGENE DINOTO was the defendant's brother. As the facility manager for the Companies, EUGENE DINOTO was responsible for fulfilling drum purchase orders on behalf of the Companies at the Belcamp and Abingdon facilities in Maryland, a job that required him to arrange and negotiate the prepurchase, transportation, and storage of the requisite number of drums needed to ship the Companies' products.

5. During the process of arranging the purchase of drums on behalf of the Companies, EUGENE DINOTO reviewed and authorized the payment of drum invoices submitted by drum suppliers doing business with the Companies. Once approved, the drum invoices were sent to the accounting department at headquarters in New York for the Companies to pay.

6. Based on arrangements made with EUGENE DINOTO, the defendant's drum supply company, American Pride, became an authorized supplier to the Companies' manufacturing facilities in Maryland.

## The Scheme to Defraud

7. Beginning no later than 2014, in the District of Maryland and elsewhere, the defendant,

**ROBERT ADRIAN DINOTO,**

2

did knowingly devise and intend to devise a scheme and artifice to defraud the Companies and to obtain money and property from the Companies by means of materially false and fraudulent pretenses, representations, and promises, that is, the defendant knowingly submitted false purchase invoices that fraudulently overstated the amount of money the Companies owed the defendant's drum supply company (hereinafter "the scheme to defraud").

### The Conspiracy to Execute the Scheme to Defraud

8. Beginning no later than 2014 until approximately August 2019, in the District of Maryland and elsewhere, the defendant,

**ROBERT ADRIAN DINOTO,**

did knowingly and willfully conspire, combine, confederate, and agree with EUGENE DINOTO to commit wire fraud, that is, to knowingly execute and attempt to execute the scheme to defraud through the use of interstate wires in violation of Title 18, United States Code, Section 1343 (hereinafter, the "conspiracy to defraud").

### Object of the Conspiracy to Defraud

9. The purpose of the conspiracy to defraud was for the defendant to obtain the Companies' money and property by materially false and fraudulent pretenses, representations, and promises.

### Manner and Means of the Conspiracy to Defraud

10. It was part of the conspiracy to defraud that the defendant, without the Companies' knowledge and consent, made a secret arrangement with EUGENE DINOTO whereby EUGENE DINOTO would intentionally overlook the false charges the defendant included on some of the American Pride invoices he submitted to the Companies via interstate email.

11.  It was further part of the conspiracy to defraud that when asked by Company representatives to review the accuracy of the fraudulent invoices submitted by the defendant on behalf of American Pride, EUGENE DINOTO intentionally ignored false charges for thousands of drums the defendant never delivered to the Companies.

12.  It was further part of the conspiracy to defraud that, despite the falsity of the invoices submitted by the defendant, EUGENE DINOTO certified the accuracy of the invoices and authorized their payment by stamping and signing them, and then submitted them to the Companies' accounting department in New York for payment.

13.  It was further part of the conspiracy to defraud that once EUGENE DINOTO approved payment for the false invoices, the Companies paid American Pride the full amount billed by sending a check via the U.S. Postal Service or interstate common carrier, which the defendant deposited into American Pride's TD Bank account ending in 6820.

18 U.S.C. § 1349

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further alleges that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on the offense charged in Count One of this Information.

### Wire Fraud Forfeiture

2. Upon conviction of the offense set forth in Count One of this Information, the defendant,

**ROBERT ADRIAN DINOTO,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud.

### Property Subject to Forfeiture

3. The property to be forfeited includes, but is not limited to, a money judgment in the amount of at least $257,181.

### Substitute Assets

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

e. has been commingled with other property that cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Date: 8/15/2022

*Erek L. Barron* by M.J.C.
Erek L. Barron
United States Attorney for the
District of Maryland

6